The undersigned have reviewed the Opinion and Award based upon the record of the proceedings before the deputy commissioner.
The appealing party has shown good grounds to reconsider the evidence. Upon reconsideration of the evidence, the Full Commission adopts in part and modifies in part the findings of fact and conclusions of law of the deputy commissioner. Accordingly, the November 14, 1994 Opinion and Award by the deputy commissioner is hereby AFFIRMED in part and MODIFIED in part. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law and ultimate award.
The Full Commission finds as facts and concludes as matters of law the following which were entered into by the parties in the Form 21 Agreement for Compensation, approved by the Industrial Commission on November 29, 1990 and the Amended Form 21, approved on February 18, 1991 as
STIPULATIONS
1. The parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act and the employer-employee relationship existed between the parties at all relevant times.
2. On April 10, 1990, the plaintiff sustained an injury by accident arising out of and in the course of the employment.
3. Defendant was a duly qualified self-insured, and Associated Risk Services Corporation was the administering agent.
4. The plaintiff's average weekly wage was $250.81, which yields a weekly compensation rate of $167.20.
5. The plaintiff received temporary total disability compensation pursuant to the Form 21 from April 11, 1990 through September 13, 1993.
6. Chief Deputy Commissioner Dianne C. Sellers approved a Form 24 Request to Stop Compensation on September 9, 1993.
7. The issue for determination is whether the plaintiff retains any disability as a result of the compensable injury for which he would be entitled to additional compensation.
* * * * * * * *
Based upon all the competent evidence adduced from the record, the Full Commission adopts in part and modifies in part the findings of fact found by the deputy commissioner and finds as follows:
FINDINGS OF FACT
1. At the time of hearing, the plaintiff was a 63 year old, literate, eighth grade educated, overweight male, who began working with defendant in January of 1988 as a chair stacker. Plaintiff's duties included removing chair frames from a conveyor chain and stacking the frames.
2. On April 10, 1990, the plaintiff sustained an admittedly, compensable injury to his back while loading chairs. The plaintiff was initially referred to Dr. B. Keith Forgy on April 11, 1990.
3. After conservative treatment did not reduce plaintiff's subjective complaints of pain, the plaintiff was referred to orthopedist Dr. Larry Anderson. A CT Scan performed on April 18, 1990 suggested a possibility of an L3-4 disc herniation; however, Dr. Anderson found no clinical evidence of such herniation, and he diagnosed the plaintiff as having an acute low back strain.
4. Plaintiff was referred to Dr. Stanley Peters, an orthopaedic surgeon, on June 28, 1990, after he continued to voice subjective complaints of low back pain. Dr. Peters diagnosed the plaintiff as having lumbar strain syndrome, and he authorized the plaintiff to return to work.
5. On August 7, 1990, the plaintiff sought a second opinion from Dr. Mark Marchese, a neurosurgeon, who diagnosed the plaintiff with lumbar spondylosis with facet disease. Dr. Marchese recommended weight loss and physical therapy. Dr. Marchese did not recommend surgery for plaintiff's back.
6. Dr. Marchese referred the plaintiff to Dr. Andrea Stutesman for work hardening. On September 14, 1990, Dr. Stutesman noted that plaintiff had mechanical derangement of the low back resultant of lumbar sprain and strain with abnormal posture and flexibility, and she opined that plaintiff should be able to return to work by October 10, 1990.
7. On October 3, 1990, Dr. Marchese found that plaintiff had reached maximum medical improvement and retained a 5% permanent partial disability to his back due to persistent low back pain.
8. On October 23, 1990, the plaintiff began work hardening at Burke Rehabilitation Center, where he was noted to be a good candidate for rehabilitation. However, the plaintiff failed to follow the program.
9. A functional capacity evaluation on November 20, 1990 indicated plaintiff was capable of performing medium capacity work, and that he should limit lifting from waist to shoulder and from shoulder to overhead due to shoulder pain.
10. On November 26, 1990, orthopaedic surgeon Dr. John de Perczel evaluated the plaintiff and diagnosed plaintiff with back strain with persistent left sciatica and degenerative disc disease. A myelogram and CT Scan ordered by Dr. de Perczel showed no evidence of disc herniation.
11. Dr. de Perczel recommended that plaintiff return to work on January 1, 1991 on light duty. Dr. de Perczel was provided with a written job description which he approved for the plaintiff.
12. On January 28, 1991, the plaintiff was seen by Dr. Anderson with continued complaints of back pain. Dr. Anderson rated the plaintiff as having a 15% permanent partial impairment to his back and authorized the plaintiff to return to work with lifting restrictions.
13. Between August 20, 1991 and November 9, 1992, the plaintiff did not seek any further medical treatment.
14. On November 9, 1992, Dr. Anderson reevaluated the plaintiff at the request of the workers' compensation carrier, at which time plaintiff was diagnosed as having chronic back pain. Dr. Anderson opined that plaintiff was unable to return to his job as a chair stacker, or to a job which would require repetitive bending and lifting.
15. On January 14, 1993, Dr. Anderson approved a job description for the pump sander job which was available for the plaintiff.
16. On January 29, 1993, defendant's human resources officer sent a letter to the plaintiff offering the pump sander job, to begin on February 15, 1993.
17. The plaintiff did not contact the defendants regarding the nature of the job offered, did not request to see the work site, and did not request any other job from defendants.
18. The plaintiff did not attempt to look for or secure any employment from any other employer since the date of the injury giving rise to this claim.
19. On October 14, 1993, the plaintiff was ordered by Chief Deputy Commissioner Sellers to undergo a medical evaluation by Dr. Scott Spillman. After evaluating the plaintiff, reviewing his records, and viewing a videotape of the pump sander job, Dr. Spillman approved the job as being suitable to plaintiff's capacity based upon the functional capacity evaluation which had been performed by Burke Rehabilitation Center which assessed the plaintiff as being capable of sedentary to light work.
20. On October 22, 1993, Dr. Anderson noted that plaintiff would be limited to working in a sitting type of position, 4 to 6 hours per day, without repetitive bending, stooping and lifting requirements.
21. On March 9, 1994, the plaintiff sought a functional and job capacity assessment from vocational counselor Gary Sigmon. Mr. Sigmon prepared a job description which he admitted in his deposition did not accurately reflect the actual requirements of the job from a physical or mental perspective. Mr. Sigmon did not consider accommodations such as a sit/stand or back chair, or adjustments to the height of the machinery, even though Mr. Sigmon admitted that he was a lecturer on the Americans with Disabilities Act, and recognized the duty of employers to provide accommodations of non-essential job functions. Therefore, Mr. Sigmon's assessment that the job was not suitable to plaintiff's capacity is not accepted as credible as it was prepared based upon inaccurate information. Of further concern, it is noted that Mr. Sigmon is not duly licensed to perform functional capacity testing, unlike the therapists with Burke Rehabilitation Center.
22. The plaintiff has been approved to return to work by his treating physicians, beginning with Dr. Marchese on October of 1990. Additionally, Dr. Anderson and Dr. Spillman both approved the pump sander job as suitable to plaintiff's abilities in 1993.
23. The plaintiff's refusal to accept the pump sander job was unjustified.
24. At the hearing, the plaintiff testified that he had developed an ulcer and depression since the work-related injury of April 10, 1990. However, medical records reflect that plaintiff had depression and anxiety problems for which he had received medication since 1988 and that plaintiff had been treated for an ulcer since 1989. The plaintiff further testified that he had moved in with his son due to his inability to care for himself. However, he later admitted that he had moved in with his son after his own trailer had burned.
25. The plaintiff testified that he could sit for only about an hour at most; however, he sat on the witness stand for more than 2 hours, and for a like amount of time in the courtroom. The plaintiff also stated he was unable to perform grocery shopping, and was videotaped lifting grocery bags and raising them up into his son's van, which was a large late model Ford Van which is approximately at knee level at its lowest point. The plaintiff was shown climbing up into the van, and he made no showing of distress in climbing up and into the van. Rather, the motion was smooth and unguarded, which was contrary to plaintiff's testimony about his movements.
* * * * * * * *
Based upon the foregoing stipulations and findings of fact the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. Medical evidence in the record clearly establishes that the plaintiff is capable of performing some work. Defendant has produced evidence that work suitable to plaintiff's capacity is available. If the employer produces evidence that there are suitable jobs available which the claimant is capable of getting, the claimant has the burden of producing evidence that either contests the availability of other jobs or his suitability for those jobs, or establishes that he has unsuccessfully sought the employment opportunities located by his employer. Tyndall v. Walter Kidde Co.,102 N.C. App. 726, 403 S.E.2d 548, disc. rev. denied, 329 N.C. 505,407 S.E.2d 553 (1991). The plaintiff has failed to carry the burden of proof that he is unsuitable for the pump sander job and he has offered no evidence of any other job search.
2. As a result of the compensable injury of April 10, 1990, the plaintiff retains a 15% permanent partial impairment to his back, for which he is entitled to receive 45 weeks of compensation pursuant to N.C.G.S. § 97-31 (23).
3. The plaintiff's refusal to return to work was unjustified, and pursuant to N.C.G.S. § 97-32, he is not entitled to further temporary total disability compensation.
4. The Form 24, approved on September 9, 1993, was properly issued by Chief Deputy Commissioner Sellers.
* * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
AWARD
1. Subject to the attorney's fee herein approved, defendant shall pay in a lump sum to the plaintiff 45 weeks of permanent partial disability compensation at the rate of $167.20 per week.
2. A reasonable attorney's fee of twenty-five percent of the compensation due plaintiff shall be deducted and paid directly to plaintiff's counsel.
3. Defendant shall pay for all medical expenses incurred by plaintiff, including $200.00 to Dr. Gary Sigmon as an expert witness fee, when bills for same have been submitted to defendant or defendant-carrier and approved pursuant to procedures established by the Industrial Commission.
4. Defendants shall pay the costs due this Commission.
 S/ ______________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ __________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ __________________ COY M. VANCE COMMISSIONER
BSB:md